BIDDISON v. INTERURBAN LAND CO.

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 30, 1912. Rehearing Denied
Jan. 11, 1913.)

1. SPECIFIC PERFORMANCE (§ 121*)—ACTIONS
—SUFFICIENCY OF EVIDENCE.

In an action for specific performance of a contract to convey land to persons named or their assigns executed to reimburse such persons for 75 acres of land donated to procure a factory near defendant's land, evidence *held* to show that such persons substantially contributed the value of such land so as to sustain a judgment awarding specific performance of defendant's contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

2. SPECIFIC PERFORMANCE (§ 64*)—RIGHT OF ACTION — PERFORMANCE BY OTHER PARTY —SUFFICIENCY.

If persons to whom defendant agreed to convey land to reimburse them for land they agreed to donate to procure a factory near defendant's land made contributions of the substantial value of the land agreed to be contributed and succeeded in getting the factory, the form of their contribution was immaterial on the right to enforce defendant's contract to convey.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 191–195, 198; Dec. Dig. § 64.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by the Interurban Land Company against Laura A. Biddison. From a judgment for plaintiff, defendant appeals. Affirmed.

Harris, Harris & Young, of Ft. Worth, for appellant. Mike E. Smith and A. J. Clendenen, both of Ft. Worth, for appellee.

CONNER, C. J. In its final form this suit is one by the appellee, the Interurban Land Company, against Laura A. Biddison for the specific performance of a contract in writing, which, omitting formal parts, reads as follows: "Whereas, B. L. Wagerman and T. J. Powell are trying to locate an iron foundry and rolling mill on the Missouri, Kansas & Texas Railway, in the southeast corner of their 201-acre tract of land, out of the J. Ashbury and J. E. Ellis and E. P. Pallis surveys, Tarrant county, Tex.; and whereas, in order to induce the location of said mills at said point, said Wagerman and Powell will have to donate to said millowners 75 acres of their land; and whereas, the location of said mill will be of great value to all surrounding lands: Now, therefore, to reimburse said Wagerman and Powell for a portion of the land to be donated by them, and the further consideration of $1.00 cash to me in hand paid, the receipt of which is hereby acknowledged, I, Laura A. Biddison, hereby agree and bind myself to convey to said Wagerman and Powell, or such parties as they may designate, by good and sufficient deed, the following described land: An un-divided one-half interest in the east 20 acres of my 80-acre farm out of the E. P. Pallis survey, Tarrant county, Tex. This conveyance is to be made when the iron mill and foundry as aforesaid are under construction at said point in the land of said Wagerman and Powell. Should a less donation of land than 75 acres be necessary to secure the location of said mills, the amount of land to be deeded by me to be reduced pro rata, and should said mill be permanently shut down within three years any unsold portion of said land shall be reconveyed to me. Witness my hand this 9th day of September, 1904. Mrs. Laura A. Biddison."

The contract was duly acknowledged, and the following are substantially the undisputed facts: Pursuant to the purpose of securing the location of the iron foundry and rolling mill mentioned in the contract quoted, the Capps Land Company, B. L. Wagerman, and T. J. Powell contracted with one W. K. Fogg, of Alliance, Ohio, who executed the contract in writing for himself and associates, to locate a complete iron bolt factory upon part of a 210-acre tract of land owned by Wagerman and Powell situated near the lands owned by Mrs. Biddison. By the terms of the contract with Fogg, Wagerman and Powell agreed to donate 10 acres of land for a mill site, and in addition thereto to give an undivided one-half interest in 130 acres of the remaining land owned by them. Soon thereafter Fogg and associates began the removal of mill machinery from Alliance, Ohio, where it was located, to Ft. Worth, and to gather material for the erection of the mill at the place designated. Wagerman and Powell and others formed a land company and caused its incorporation as the "Interurban Land Company," now appellee herein, to which Wagerman and Powell conveyed the 210 acres mentioned, receiving therefor stock in the sum of $20,000, the land company at the same time guaranteeing to fulfill the contract with Fogg. The Interurban Land Company thereupon conveyed to Fogg and associates the 10-acre mill site mentioned, but, so far as disclosed by the record, never at any time thereafter made formal conveyance of any other lands or interests in lands. However, soon after the preliminary steps above mentioned, Fogg and associates either failed because of insolvency, or otherwise refused to complete the undertaking, whereupon Powell, Wagerman, Wm. Capps, Capps Land Company, and others took the matter in hand, discharged large debts that had been accumulated by the mill company, guaranteed obligations for material, etc., and proceeded with the erection of the mill. The mill was in fact erected and extended to a scope beyond what had been originally contemplated, a street car line extended to the works, and some $400,000 or $500,000 put into the enterprise by the parties last mentioned. It was shown that, at and prior to

the location of the mill, plaintiff's land and the lands of other parties in the vicinity were worth from $75 to $100 per acre, but that the value of such lands had been enhanced by the location and operation of the mill and the extension and operation of the street car line to from $600 to $1,000 per acre. It also appears that at the time of the conveyance from Wagerman and Powell to the Interurban Land Company it was contemplated by the interested parties that the entire tract should be platted into lots and sold and that one-half of the proceeds of such sales should be applied for the benefit of the mill company in the payment of material, labor, etc. It also appears that the consideration and inducement to Mrs. Biddison was the location and operation of the iron mill plant as indicated in the contracts mentioned. She testified, among other things, as follows: "Mr. Wagerman and Mr. Anderson came to see me at least one-half dozen times before I signed the instrument (the contract above quoted). They stated to me that they were going to build a factory and this would increase the value of my land. This was the inducement they offered me to sign the instrument, stating that my giving them the land would aid them in getting the factory here. The consideration upon which they made the appeals to me to sign the said instrument was a promise of something that they were to accomplish in the future and said my giving them the land would aid them in accomplishing their future plans. I relied on their statements made to me and executed the papers." It further appears that the mill after its final erection passed through various vicissitudes but through the continued aid and support given it by Wagerman, Powell, Wm. Capps, and other stockholders in the Interurban Land Company, it was enabled to continue business, employing from 150 to 250 hands, until the institution of this suit and until the present time so far as shown by the record.

The court peremptorily instructed the jury to find for appellee, and judgment was entered in accordance therewith Mrs. Biddison has appealed and complains of the peremptory instruction.

[1] The development of the case has not been very satisfactory to us, but we have finally concluded not to disturb the judgment below. While, as stated, it does not appear that the appellee company ever made any formal conveyance of the undivided one-half interest of the 130 acres as it guaranteed to do in its contract with Wagerman and Powell, yet it appearing that the plan adopted by all of the interested parties of platting the entire tract and dividing the proceeds would substantially amount to the same thing as a conveyance, and that the stockholders of the Interurban Land Company had otherwise paid out and contributed for the accomplishment of the general purpose much more than the value of the undivided one-half interest which it is insisted should have been conveyed to the iron company, we do not see our way clear to say that Wagerman and Powell did not in substance fully comply with the terms of their contract with Mrs. Biddison, especially in view of the undisputed fact that the essential purpose of Mrs. Biddison was to aid in securing the location and operation of the iron mill in question and this was fully effected.

[2] The form of the contributions by Wagerman and Powell in the accomplishment of the general purpose does not seem to be material. It is undoubtedly true that as much as 10 acres was at their instance donated to the iron mill company, and that in addition thereto an equivalent in value of the remaining 65 acres contemplated in the contract with Mrs. Biddison. At all events, Wagerman and Powell without dispute conveyed all of the title they had in the entire tract and secured the guaranty of the Interurban Land Company, not shown to be insolvent, to convey the undivided interest which would include the land Mrs. Biddison now insists should have been conveyed. This written guaranty by the Interurban Land Company, it seems, could yet be enforced by the Iron Mill & Rolling Mill Company, if in fact the relative rights of the parties have not been otherwise adjusted. It also appears that the appellee company has acquired all of the rights of Wagerman and Powell under Mrs. Biddison's contract, so that on the whole, as stated, we conclude that we are unable to disturb the judgment below, and it is, accordingly, affirmed.

Affirmed.